Elsa B. Chapin v. Commissioner.
Chapin v. Commissioner
Docket No. 10971.
United States Tax Court
1947 Tax Ct. Memo LEXIS 130; 6 T.C.M. (CCH) 882; T.C.M. (RIA) 47224; July 28, 1947
Robert McDougal, Jr., Esq., Rm. 1400 38 S. Dearborn St., Chicago 3, Ill., for the petitioner. David Long, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $2,054.47 in income tax for 1943. The only issue for decision is whether $6,000 received by the petitioner from her divorced husband in 1942 and 1943 represented taxable income to her. Findings of Fact The petitioner filed her individual income tax returns for 1942 and 1943 with the *131 collector of internal revenue for the first district of Illinois. She and Simeon B. Chapin, Jr. were married in 1926. They have three children, daughters, one born in 1928, one in 1930, and the other in 1934. The petitioner and Chapin entered into a separation agreement dated May 2, 1941. The petitioner had income of her own from which she had been paying about $15,000 and Chapin had been paying about $6,000 of the annual family expenses for some years prior to the agreement. The petitioner, in entering into the agreement, desired no part of the $6,000 from Chapin for her own use but felt that he should continue to contribute at least $6,000 for the support, maintenance, and education of their three daughters and that she and her daughters should receive more if his earnings increased. She had sufficient income of her own for her own needs. The agreement of May 2, 1941 provided that they should live apart; the petitioner should have custody of the three children until each should become 21; "THIRD: Support and Maintenance. A. The Husband shall pay to the Wife for her maintenance and support and for the maintenance and support of the daughters: "(i) The sum of six thousand *132 dollars ($6,000) per annum in equal monthly installments in advance, commencing on the 2nd day of May, 1941. "(ii) If in any calendar year the Husband's income, as hereinafter defined, shall be in excess of $15,000 (including therein the payment of the sum of $6,000 specified in subdivision (i) above), he shall pay to the Wife for such maintenance and support for such year the following additional amounts; an amount equal to (a) 50% of his income over $15,000 up to $20,000, and (b) 35% of his income over $20,000 and up to $30,000. Such additional amounts shall be paid by the Husband to the Wife within thirty (30) days after the close of such year. "(iii) If the marriage between the parties hereto should hereafter be duly dissolved and the Wife should remarry, then the Husband shall not be obligated thereafter to make the payments specified in subdivisions (i) and (ii) above, but if any of the daughters are then still minors, he shall pay to the Wife the following: For each daughter who is then still a minor, the sum of $2,000 per annum for her support and maintenance, such payments to be made in equal quarterly installments in advance, commencing on the date of the remarriage of *133 the Wife and to end in the case of each daughter upon her attaining the age of twenty-one years." all payments should cease as of Chapin's death; Chapin should transfer $45,000 of his life insurance to the petitioner as trustee for the daughters; Chapin should pay the premiums on the policies and should also pay the premiums on $15,000 of certain bonds registered in his name as trustee for his daughters; Chapin should not otherwise be liable for the support and maintenance of his wife and daughters; Chapin should transfer to the petitioner's father as trustee for the daughters all cash, securities, and savings accounts which he holds as trustee for the daughters; and Chapin should keep in force a will giving not less than one-half of his estate to his daughters. The agreement was also a complete release by each of the property of the other, and it provided that the petitioner should have a house in Connecticut and the furnishings therein with a few exceptions. The provisions of the agreement were to be incorporated in any decree of divorce which either might obtain. The agreement was to be governed and construed in accordance with the laws of Connecticut. The petitioner obtained *134 a divorce from Chapin in Nevada by a decree dated August 7, 1941 in which the agreement of May 2, 1941 was incorporated. The petitioner has not remarried. Chapin paid $6,000 to the petitioner in each of the years 1942 and 1943, in accordance with the agreement of May 2, 1941 and the decree of divorce. He deducted $6,000 on his returns for 1942 and 1943 as alimony payments to his divorced wife. The petitioner had separate income of her own for 1942 and 1943 amounting in each year to about $15,000. She spent more than $6,000 in each year for the support, maintenance, and education of her three minor daughters. She reported as taxable income on her return for each year $1,500 of the amount received from Chapin and explained that the $6,000 was received and spent for the support and maintenance of the three minor children, but she was nevertheless reporting one-fourth of the total amount. She claimed credit on each return for the two older children as dependents. The Commissioner added $4,500 to the petitioner's income of each year in determining the deficiency and explained that the entire $6,000 received from her former husband was income to her under section 22(k), I.R.C. *135 He also made a reduction in the deduction for medical expenses resulting from the addition of $4,500 to income. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: Section 22(k) which was added to the Internal Revenue Code by section 120(a) of the Revenue Act of 1942, provides that the gross income of a divorced wife shall include periodic payments received in discharge of "a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce," and such sums shall not be includable in the gross income of the husband. It further provides that it "shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband." The following is from the report of the Finance Committee of the Senate on the Revenue Act of 1942, (Senate Report No. 1631, 77th Cong., 2nd Session, p. 86): "Section 22(k) and section 171 do not apply to that part of any periodic *136 payment under section 22(k) and to that part of such trust income under section 171(a) which, by the terms of the decree or the written instrument under section 22(k) or of the trust instrument under section 171(a), is specifically designated as a sum payable for the support of minor children of the husband. * * * If, however, the periodic payments and the trust income are received by the wife for the support and maintenance of herself and of minor children of the husband without such specific designation of the portion for the support of such children, then the whole of such amounts is includible in the income of the wife as provided in section 22(k) and in section 171." The petitioner contends that she overpaid her tax as a result of including in her income $1,500 of the $6,000 received from her divorced husband. She argues that the entire amount was fixed in terms of $2,000 for each daughter for the support of the daughters as is shown by reading paragraph "THIRD" of the agreement. Her point is that since $2,000 was to be paid under subparagraph (iii) for the support of each minor child in case the mother remarried, $2,000 was also intended for each child under subparagraph (i) *137 and the words "to the wife for her maintenance and support" do not mean that any part of the $6,000 was for her personal use. Cf. Robert W. Budd, 7 T.C. 413, affirmed Fed. (2d) , (6/10/47). She says her testimony that she asked for none of the $6,000 supports this interpretation. It seems reasonably clear that a large part of the $6,000 was intended by both the husband and the wife to be used for the support of the children. However, this agreement, written before section 22(k) was enacted, provided that the lump sum of $6,000 was for the maintenance and support of the wife and children. Her husband no doubt saw to it that the wife was included in that provision so that the agreement would thus expressly provide alimony or a payment in lieu thereof. He would have reason to object to any change in that language. It was necessary in the discharge of his legal obligation towards his wife. The provisions of subparagraph (iii) do not show that $2,000 was to be for the support of each daughter under (i) and that none of the $6,000 was in discharge of a legal obligation towards the wife. It is improper to say under all of the terms of the agreement that no part of the $6,000 *138 was in discharge of a legal obligation of the husband to maintain and support his wife. The law does not permit an allocation, in such cases, but expressly provides that the entire payment shall be included in the income of the wife since no specific part or amount was fixed as payable for the support of the minor children. This may be unfortunate in the present case but it is the law. Dora H. Moitoret, 7 T.C. 640. Decision will be entered for the respondent.